Michael A. Wentz, Esq. (PA Bar #327842)
Joseph E. Mattia, Esq. (PA Bar #326282)
THE BOONSWANG LAW FIRM
1500 Sansom St., Suite 200
Philadelphia, PA 19102

## IN THE UNITED STATES DISTRICT
## COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNETTE CATON, INDIVIDUALLY AND AS REPRESENTATIVE OF HER ERISA-GOVERNED EMPLOYEE WELFARE BENEFIT PLAN AND ON BEHALF OF ALL SIMILARLY SITUATED PLANS,<br><br>Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant, | **Case No. 26-CV-2531** |

## CLASS ACTION COMPLAINT

Plaintiff Shannette Caton ("Plaintiff"), individually and in her representative capacity on behalf of her ERISA-governed employee welfare benefit plan (the "Plan") and on behalf of a class of similarly situated plans and ERISA Plan Participants, alleges:

## PRELIMINARY STATEMENT

1. Upon information and belief, this case concerns a system implemented by Defendant which inherently inflicts fiduciary breaches across all ERISA governed plans in which Defendant acts as the claims administrator.
2. An ERISA claims administrator is the party responsible for determining benefit decisions underneath ERISA insurance plans.
3. Upon information and belief, Defendant has implemented a pattern of legally impermissible coverage denials across all of the ERISA governed plans in which Defendant acts as the claims administrator.
4. Specifically, Defendant invites plan participants to elect life insurance coverage, accepts and retains premiums corresponding to those elections, and treats coverage as "active" for purposes of billing.

5. Across all of the ERISA governed plans in which Defendant acts in this fiduciary capacity, when a claim is submitted asking Defendant to honor the coverage amount corresponding to the amount of premiums Defendant has received from the relevant Plan Participant, Defendant denies benefits based on an absence of Evidence of Insurability ("EOI"), asserting that coverage never became effective.

6. This is not a mistake. It is a system designed to enable Defendant to collect premiums for coverage Defendant never intends to honor.

7. Defendant retains these premiums and makes money off them through passive investments.

8. Defendant's practices create illusory insurance coverage. This is coverage that "exists" on paper when premiums are paid but disappears when insurance benefits are claimed.

9. Defendant gets all the benefits of the premiums but none of the liability of ever having to provide the coverage.

10. ERISA does not permit a fiduciary to accept premiums for coverage it has not approved and then invoke that lack of approval to deny benefits.

11. Plaintiff brings this action on behalf of her Plan and a class of similarly situated plans and employees to remedy Defendant's widespread fiduciary misconduct.

## NATURE OF THE ACTION

12. This action is brought pursuant to ERISA § 502(a)(2) and § 502(a)(3), 29 U.S.C. § 1132(a)(2)–(3).

13. Plaintiff sues in a representative capacity on behalf of the Plan in which she is a Plan Participant in an effort to recover unjust losses and obtain equitable relief.

14. ERISA expressly authorizes a participant to bring suit on behalf of the plan for fiduciary breaches. *See* 29 U.S.C. § 1132(a)(2).

15. Our jurisprudence recognizes that such claims may challenge systemic fiduciary practices affecting a plan as a whole.

16. Moreover, the misconduct challenged here is not plan-specific. It reflects a uniform fiduciary process applied across the plans in which Defendant acts as a fiduciary.

17. The jurisprudence instructs that Plaintiff, as representative of her Plan seeking relief for all similarly situated Plans, may appropriately act as class representative on behalf of all ERISA governed Plans in which Defendant acts as a fiduciary.

## JURISDICTION AND VENUE

18. This Court has jurisdiction under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

19. Venue is proper because Defendant is home here, conducts substantial business in this District, and acts as a fiduciary affecting plan participants here.

## PARTIES

20. Plaintiff is a participant in and beneficiary of an ERISA-governed employee welfare benefit plan.

21. Plaintiff's husband, Alfred Caton, died on April 14, 2024.

22. Defendant is the insurer and claims fiduciary responsible for underwriting, administering, and adjudicating benefits.

23. Defendant is a fiduciary which exercised discretionary authority over:
    a. coverage determinations,
    b. premium collection and retention, and
    c. claims adjudication

24. Courts recognize fiduciary status where, such as here, the defendant controls plan communications and benefit determinations.

## FACTUAL BACKGROUND

25. Plaintiff elected $100,000 in dependent life insurance coverage insuring the life of her late husband, Alfred Caton.

26. The policy language identifies a guaranteed issue amount of $50,000, with higher amounts allegedly requiring EOI approval.

27. Defendant accepted Plaintiff's election.

28. Defendant initiated and maintained premium deductions corresponding to the full $100,000 in life insurance coverage.

29. To be painfully clear, Defendant chose to accept premiums for the full $100,000 in coverage, not the lower amount of premiums corresponding to the lesser $50,000 coverage, and later denied coverage when benefits became due because Defendant claims it wrongfully received the premiums for the full $100,000 in coverage.

30. Defendant did not reject the election.

31. Instead, Defendant accepted the election.

32. Defendant did not suspend premium collection pending EOI approval.

33. Instead, Defendant freely accepted premiums for coverage Defendant never intended to honor.

34. Defendant did not inform Plaintiff that part of the life insurance coverage was inactive.

35. Instead, Defendant accepted premiums for $100,000 in coverage.

36. After the insured's death, Defendant paid only $50,000 in coverage benefits.

37. Defendant denied the remaining $50,000 based on lack of EOI.

38. Defendant had not made any determination regarding insurability prior to death.

39. Defendant deferred that determination until after the claim was submitted.

40. Plaintiff reasonably believed full coverage was in force.

41. That belief was induced by Defendant's conduct, including:
    a. acceptance of the election,
    b. ongoing premium deductions, and
    c. incorrect notices regarding coverage status.

42. Plaintiff and the Plan suffered loss as a result.

## SYSTEMIC PRACTICES

43. The conduct at issue arises from Defendant's standardized systems which inherently cause widespread breaches of fiduciary duty.

44. Defendant's systems integrate enrollment, payroll deduction, and claim adjudication.

45. Upon information and belief, those systems:

    a. invite elections for life insurance coverage greater than the amount Defendant intends to honor;

    b. initiate payroll deductions based on those elections;

    c. do not require confirmation of required documentation being completed before premium collection begins;

    d. collect premiums when required documentation has yet to be received; and

    e. defer coverage disputes until claim submission.

46. These practices are uniform across the ERISA governed Plans in which Defendant acts as the claims administrator.

47. The result is that Plan participants pay for coverage that Defendant later denies.

48. Defendant's pattern of systemically violating its fiduciary duties is not novel. In April 2023, the United States Department of Labor, through the Employee Benefits Security Administration ("EBSA"), publicly announced the results of a federal investigation into materially similar conduct by a major life insurer. The Department found that, across many of its ERISA governed life insurance group Plans, the insurer had accepted premiums for supplemental life insurance coverage over extended periods of time, while failing to confirm whether evidence of insurability requirements had been satisfied, and then denied claims after the insured's death based on the absence of such evidence. The Department concluded that this practice was improper and required the insurer to change its practices, including prohibiting claim denials based on the lack of evidence of insurability where premiums had been received beyond a limited period. See Exhibit A.

49. The Department of Labor further made clear that such conduct—accepting ongoing premium payments while failing to determine or communicate whether coverage is in force, and later denying benefits on technical documentation submission grounds after death—is inconsistent with ERISA's fiduciary obligations. See Id.

50. Following the Department of Labor's action, the insurance industry acknowledged the impropriety of this type of structure causing inherent breaches of fiduciary duty. For example, The Standard publicly stated that, where an insurer has not determined eligibility within a reasonable period of time and has continued collecting premiums, it cannot deny claims solely for lacking the EOI documentation. The Standard plainly recognized that collecting premiums for supplemental life insurance coverage requiring evidence of insurability without confirming approval creates an improper and untenable situation for plan participants and beneficiaries. See Exhibit B.

51. Despite this clear regulatory action and industry acknowledgment, Defendants employed a similar type of structure here. Defendants invited Plaintiff, and all similarly situated Plan Participants, to elect coverage above the guaranteed issue amount, initiated and continued payroll deductions corresponding to that coverage, failed to make a timely insurability determination, failed to provide clear notice that the excess coverage was not in force, and denied benefits only after the insured's death. This conduct mirrors the very practice that federal regulators have identified as improper and that the insurance industry has recognized as unacceptable given the practice amounts to blatant breaches of fiduciary duty.

52. Courts recognize that fiduciary breach claims may be based on such uniform process failures affecting all participants.

**CLASS ALLEGATIONS**

53. Plaintiff seeks to represent:
   a. All ERISA-governed employee welfare benefit plans, and participants in those plans, for which Defendant served as the claims administrator, where life insurance claims were denied based on the insured's failure to provide EOI after Defendant received premiums for more than three months without confirming the insured's eligibility.
54. This case presents common questions, including:
   a. whether Defendant may collect premiums without confirming coverage;
   b. whether Defendant must provide accurate coverage information; and
   c. whether Defendant may deny benefits after accepting premiums.
55. Courts recognize that such uniform fiduciary conduct supports class treatment.

## CLAIMS FOR RELIEF
## COUNT I – ERISA § 502(a)(2) – Breach of Fiduciary Duty (On Behalf of the Plan)

56. Plaintiff incorporates all preceding allegations.
57. ERISA requires fiduciaries to act solely in participants' interests and with prudence. 29 U.S.C. § 1104(a).
58. Fiduciaries are liable for losses resulting from breaches. 29 U.S.C. § 1109(a).
59. Participants may bring derivative claims on behalf of all plans affected by Defendant.
60. Defendant breached fiduciary duties by:
   a. Accepting Premiums Without Ensuring Coverage
      i. Defendant received premiums for coverage it had not approved
      ii. A prudent fiduciary cannot accept premiums while failing to determine whether coverage exists
   b. Failing to Provide Accurate Information
      i. Defendant failed to inform Plaintiff that excess coverage was inactive
      ii. Courts recognize that failure to provide complete and accurate information can constitute fiduciary breach
   c. Structuring a Self-Benefiting System
      i. Defendant's system allowed it to:
         1. collect premiums,
         2. defer risk, and
         3. deny claims after loss.
61. Courts recognize such structures as actionable fiduciary misconduct.
62. Defendant's breaches caused (a) wrongfully unpaid benefits and (b) improperly retained premiums.
63. The Plan, and all similarly situated Plans, suffered losses recoverable under ERISA.

## COUNT II
## ERISA § 502(a)(3) – Equitable Relief

64. Plaintiff incorporates all preceding allegations.
65. ERISA authorizes equitable relief to redress violations and enforce plan terms.
66. Defendant's conduct was misleading and induced reliance.

67. Plaintiff reasonably believed coverage existed.

68. Courts recognize such systemic practices as actionable under ERISA.

69. Defendant's misconduct is ongoing and systemic.

70. Plaintiff seeks:
   a. surcharge equal to denied benefits;
   b. disgorgement of premiums;
   c. equitable estoppel; an
   d. injunctive relief.

## PRAYER FOR RELIEF

71. WHEREFORE, Plaintiff requests:
   a. Certification of the class;
   b. Appointment of Plaintiff as representative;
   c. Restoration of losses to the Plan and all similarly situated Plans;
   d. Equitable relief;
   e. Fees and costs; and
   f. Such other relief as the Court deems appropriate.

Dated: April 17, 2026                    Respectfully Submitted,


By: */s/ Michael Wentz*
The Boonswang Law Firm
1500 Sansom Street, Suite 200
Philadelphia, PA 19102
Tel: 215.940.8900
Michael@boonswanglaw.com

By: */s/ Joseph Mattia*
The Boonswang Law Firm
1500 Sansom Street, Suite 200
Philadelphia, PA 19102
Tel: 215.940.8900
Joseph@boonswanglaw.com